IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:05-cr-151 (RDA) |
| | ) | |
| JAMES ARNESS ERBY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on *pro se* Defendant James Arness Erby's Motion for Compassionate Release, requests for appointment of counsel, and Motion for Retroactive Application of the Sentencing Guidelines. Dkts. 130, 136, 138, 139. Considering the Motion, as well as the Government's Opposition (Dkt. 150), the Court DENIES the Motions for the reasons that follow.

I. BACKGROUND

On October 16, 2004, Defendant shot Lantz Day ("Day") twice in the leg while Day was having an argument with a woman with whom the defendant was engaged in a casual romantic relationship. Dkt. 116 ¶¶ 13-33. On December 30, 2004, Defendant shot and killed James Ridley ("Ridley") while attempting to rob him. *Id.* From spring of 2004 through the end of that year, Defendant brought ecstasy and marijuana from Maryland to Virginia to sell, and he was observed in possession of at least two different firearms at different times by multiple witnesses during this time. *Id.*

On April 13, 2005, a federal grand jury indicted Defendant on a charge of Felon in Possession of a Firearm and Ammunition. Dkt. 1. On June 9, 2005, the grand jury returned a Superseding Indictment charging Defendant with two counts of Felon in Possession of a Firearm and Ammunition. Dkt. 8. On November 10, 2005, the grand jury returned a Second Superseding Indictment charging the defendant with the following four counts: (i) Count One: Felon in Possession of a Firearm and Ammunition on or about October 16, 2004, in violation of 18 U.S.C. § 922(g)(1); (ii) Count Two:

Felon in Possession of a Firearm and Ammunition on or about December 30, 2004, in violation of 18 U.S.C. § 922(g)(1); (iii) Count Three: Conspiracy to Distribute MDMA, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (iv) Count Four: Use/Carry a Firearm During a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1). Dkts. 18, 113.

On January 17, 2006, following a three-day trial, a jury of his peers convicted Defendant on all four pending counts. Dkt. 40. On May 12, 2006, former U.S. District Judge Claude M. Hilton sentenced Defendant to 120 months of incarceration on each of Counts One and Two, 240 months of incarceration for Count Three, and life imprisonment for Count Four. Dkt. 54. The terms of imprisonment for Counts One, Two, and Three were to be served concurrently, while the sentence for Count Four was to be served consecutive to the other sentences. *Id.* The sentences for Counts One, Two, and Three included three-year supervised release terms. *Id.* On direct appeal, the Fourth Circuit affirmed Defendant's sentence. Dkt. 64. Defendant's subsequent motions to vacate pursuant to § 2255 were denied. Dkt. 78 (denying § 2255 motion); Dkt. 89 (Fourth Circuit dismissing appeal); Dkt. 113 (denying second § 2255 motion); Dkt. 117 (Fourth Circuit denying application for second § 2255 motion).

Defendant first filed a Motion for Compassionate Release on January 27, 2021, but later withdrew that motion. Dkts. 118, 129.[1]

On July 6, 2022, Defendant filed another Motion for Compassionate Release, to which the Government responded in opposition on July 29, 2022. Dkts. 130, 133. Defendant replied to the Government's response on August 16, 2022. Dkt. 134.

---

[1] The first Motion for Compassionate Release as well as a number of motions that are over ten years old remain pending on the docket. On July 6, 2022, Defendant indicated that he withdrew "all my previous motions and supplements." Dkt. 129. Accordingly, the Court will direct the Clerk of Court to terminate the docket entries at 75, 81, 92, 94, 96, 98, 99, 100, 101, 106, 108, 109, 118, 127, 128.

On April 1, 2024, and May 28, 2024, Defendant filed requests for appointment of counsel. Dkts. 136, 138.

On August 21, 2024, Defendant filed a Motion for Retroactive Application of Sentencing Guidelines. Dkt. 139.

On February 10, 2026, Defendant filed a supplemental brief to his Motion for Compassionate Release. Dkt. 140. The case was subsequently reassigned to this District Judge on February 11, 2026.

On February 13, 2026, this Court directed the Government to respond to the Motion for Retroactive Application of the Sentencing Guidelines and the Emergency Supplemental Brief. Dkt. 141. The Government thereafter sought an extension of time to reply, which was granted. Dkts. 143, 144. In the interim, Defendant filed an Amended Emergency Supplemental Brief. Dkt. 146. On March 26, 2026, Defendant also filed a letter with the Court. Dkt. 149. On April 24, 2026, the Government filed its Opposition. Dkt. 150.

## II. MOTIONS FOR APPOINTMENT OF COUNSEL

Before addressing Defendant's substantive motions, the Court must address Defendant's motions for appointment of counsel. Dkts. 136, 138. In Defendant's first request for counsel, Defendant sought to have counsel appointed from the Office of the Federal Public Defender. Dkt. 136. In his second request, Defendant reiterates his request for counsel. Dkt. 138. Both of these motions were filed well before this case was reassigned to this District Judge.

The Supreme Court has recognized that convicted defendants have no inherent constitutional right to counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *see also Hunt v. Nuth*, 57 F.3d 1327, 1340 (4th Cir. 1995). Rather, defendants are only entitled to appointment of counsel in exceptional circumstances where required by the interests of justice. *See United States v. Riley*, 21 F. App'x 139 (4th Cir. 2001); 18 U.S.C. § 3006A(a)(2). Here, Defendant has not identified, and the Court does not find, that any such exceptional circumstances exist. Accordingly, Defendant's requests for counsel will be denied.

3

### III.    MOTION FOR COMPASSIONATE RELEASE

The legal standard for evaluating motions for compassionate release is well settled. Simply put, a defendant seeking a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) bears the burden of establishing (1) that there are "extraordinary and compelling reasons" warranting a sentence reduction and (2) that analysis of the § 3553(a) factors counsels that a sentence reduction is appropriate as a matter of judicial discretion. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Sprague*, 838 F. App'x 775, 775–76 (4th Cir. 2021); *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021). Here, Defendant's Motion fails at each step of the analysis.

### A.    Exhaustion

Where a defendant asserts a claim of compassionate release, the Court must first determine whether the defendant has exhausted his claim. Section 3582(c)(1)(A) requires that such motion may only be made "after the defendant has fully exhausted all administrative rights to appeal" or "the lapse of 30 days from receipt of such request by the warden of defendant's facility." 18 U.S.C. § 3582(c)(1)(A). A defendant must exhaust each ground for compassionate release. *See United States v. King*, 2025 WL 1692747, at *1 (4th Cir. June 17, 2025) (affirming denial of compassionate release where defendant had not established that he had exhausted his particular claim of entitlement to compassionate release).[2]

In his first and second Motions for Compassionate Release (Dkts. 118, 130), Defendant sought compassionate release based on: (i) his conditions of confinement; (ii) his rehabilitation efforts; and

---

[2] In his most recent filing, Defendant also seeks to base his compassionate release motion on: (i) the use of acquitted conduct to enhance sentence; and (ii) the alleged unusual and excessive length of his sentence. Dkt. 355. Defendant has not demonstrated that he has exhausted any of these bases for compassionate release. Nor does he identify any conduct of which he was acquitted – based on his acquittal on Count 2 (intentional killing while engaged in drug trafficking) – that would not be covered by his conviction on Count 3, for use of a firearm in connection with drug trafficking resulting in death, in violation of 18 U.S.C. § 924(j). Furthermore, as discussed *infra*, Defendant has not established that his sentence on Count 3 is unusually lengthy or represents a gross disparity.

4

(iii) his sentence on Count 4. Dkt. 118 at 3; Dkt. 130 at 5. In both of these Motions, Defendant references attempts at exhaustion taking place in December 2020. Dkt. 118 at 2; Dkt. 130 at 3. With his first Motion for Compassionate Release, Defendant attached documentation indicating that he had attempted to exhaust his claim that his sentence on Count 4 was unwarranted. Dkt. 118 at 13-14.

In his supplemental briefing, Defendant argues that the following constitute additional reasons to grant him compassionate release: (i) an alleged failure to apply a base offense level of 38; (ii) an alleged failure to provide factual findings for the application of a cross-reference to first-degree murder Guidelines; (iii) an alleged disparity with respect to the sentence on Count 4; (iv) intervening case law establishing that Count 1, a violation of 21 U.S.C. § 846, no longer constitutes a drug trafficking crime so as to form the predicate necessary for Count 4; (v) his conditions of confinement during the COVID-19 pandemic; (vi) his lengthy sentence; and (vii) his rehabilitation efforts. Dkts. 140, 146. Attached to Defendant's supplemental briefing is a request to the Warden from an attorney representing Defendant seeking compassionate release based on those same bases. Dkt. 140-1 at 2-8.

In arguing that Defendant has failed to exhaust, the Government refers only to Defendant's claim regarding his conviction under 21 U.S.C. § 846. Dkt. 150 at 5. The Government argues that Defendant did not present such a claim to the Warden as required by statute. *Id.* But the Government does not address the letter attached to his supplemental briefing which refers to Section 846. Dkt. 140-1 at 6 (asserting in letter to Warden that "federal courts have found that Conspiracy in a [sic] violation of 21 U.S.C. [§] 846 is not a 'drug trafficking crime'"). Accordingly, it appears to the Court that Defendant has properly exhausted his claims.

B.    Extraordinary and Compelling Circumstances

Defendant raises a number of alleged bases on which to reduce his sentence. Although Defendant does not directly allege that such bases constitute extraordinary and compelling

5

circumstances, the Court construes them as such. The Court also considers these alleged bases individually and together.

i.    *The Guideline Calculation and Defendant's Life Sentence*

Defendant challenges his life sentence with respect to Count 4 in two ways. First, Defendant argues that his base offense level should have been calculated at 38, because his offense involved second-degree murder. Dkt. 140 at 3-6. Defendant also argues the corollary, that Judge Hilton inappropriately applied a first-degree murder cross reference. *Id.* at 6-10. Second, Defendant argues that his life sentence constitutes an anomaly because he argues that the Guidelines range for Count 4 was the mandatory minimum of five years. *Id.* at 10-15. The Court will take up the second argument first.

Defendant argues that the Guidelines range and mandatory minimum sentence for Count 4 was five years and, thus, his sentence of life represents an unwarranted sentencing disparity. But, as the Presentence Investigation Report ("PSR") reflects, Defendant's Guidelines range was "Life incarceration," premised on a calculation of the Guidelines for Count 2, but Count 4 was the only Count for which the statutory maximum reached life. Dkt. 116 ¶ 86 and Worksheets. There is no statutory maximum for a Section 924(c) offense; thus, the statutory maximum is life. *See United States v. Link*, 214 F. Supp. 3d 506, 516 (E.D. Va. 2016) ("The statutory maximum for both of defendant's § 924(c) convictions is life imprisonment."). Additionally, as Judge Hilton previously explained in denying Defendant's motion to vacate,

> the guidelines' range and the sentenced [sic] imposed on count four were not based on facts that had to do with the legally prescribed minimum or maximum for § 924(c), such as whether a firearm was "brandished" or "discharged." Rather, both were based on the murder of James Ridley, which was the factual basis underlying count two of the Second Superseding Indictment. The jury found the [defendant] guilty of count two. The guidelines range of life imprisonment for the § 924(c) charge in count four arose because of the cross-reference to the murder under § 2A1.1 of the U.S. Sentencing Guidelines. *See* U.S.S.G. §§ 1B1.1(3)(a)(1)(A), 2K2.1(c)(1)(B), 2A1.1(a). ... [The] facts that the Court relied upon in sentencing the [defendant] only determined

the appropriate sentence within the permissible statutory range, rather than set the punishments available under the statute[.]

Dkt. 113. Thus, Defendant's contention that he received a life sentence based solely on possessing or brandishing a firearm is simply incorrect. Moreover, Defendant's contention that he received an upward departure is also incorrect because the Guidelines range applicable to him at sentencing was life. Dkt. 140 at 14. Finally, federal courts have recognized that a life sentence for a Section 924(c) offense is not substantively unreasonable where other counts of conviction would not permit the sentencing court to take sufficient account of the defendant's role in a murder. *See United States v. Snyder*, 865 F.3d 490, 502 (7th Cir. 2017) ("But it is not unreasonable here, where the statutory maximums for the other two counts of conviction (twenty years for the Hobbs Act robbery and ten years for being a felon in possession) would not have allowed the court to take sufficient account of Snyder's role in the murder of Paige Mars. Congress authorized life sentences under § 924(c)(1)(A)(ii)."); *see also United States v. Brewer*, 708 F. App'x 96, 101 (3d Cir. 2017) (affirming life sentence on Section 924(c) count where the defendant shot a shop owner during the course of a robbery). Accordingly, Defendant has not established extraordinary and compelling circumstances in this regard.

With respect to the applicable cross-reference, Defendant argues that his offense level was improperly calculated in reliance on a First-Degree Murder cross reference instead of a Second-Degree Murder cross-reference. Defendant first argues that Amendment 684 to the Sentencing Guidelines provide for the application of the Second-Degree Murder cross reference. Dkt. 140 at 2-3.[3] Prior to Amendment 684, the Guidelines stated, "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime

---

[3] Defendant refers to Amendment 685, but this appears incorrect. Amendment 684 addresses the appropriate cross-reference for various types of murder, while Amendment 685 does not. Accordingly, the Court construes references to Amendment 685 to mean references to Amendment 684.

jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)." U.S.S.G. § 2D1.1(d)(1) (Nov. 1998). In turn, section 2A1.1 of the Guidelines instructs that the base offense level under this circumstance is 43. U.S.S.G. § 2A1.1(a). And the Guidelines "range" for individuals who have an offense level of 43 is "life." U.S.S.G. ch. 5, pt. A (sentencing table). However, in 2006, Section 2D1.1(d)(1) was amended "to allow the application of § 2A1.2 (Second Degree Murder) in cases in which the conduct involved is second degree murder." U.S.S.G. App. C, Amend. 684 (eff. Nov. 1, 2006). Amendment 684, which was not retroactive, provides that the base offense level for second degree murder is 38. U.S.S.G. § 2A1.2(a). As the Worksheets to the PSR make clear, the calculation of the Guidelines did not rely on Section 2D1.1(d)(1), which is what was amended by Amendment 684. Rather, the calculation was premised on Section 2K2.1(c), which Defendant does not allege was impacted by Amendment 684. Dkt. 116 at Worksheet A (Count 2). Thus, Defendant's argument in this regard is unpersuasive. Even so, assuming *arguendo* that Defendant's argument regarding a base offense level was correct, the Guidelines range would still be 360 months to life premised on a total offense level of 40 (base offense level of 38 plus 2 level obstruction of justice enhancement) and a Criminal History Category IV. Accordingly, Defendant's argument that this constitutes extraordinary and compelling circumstances is unavailing where the total sentence that Defendant received is still within the calculated Guidelines range.

To the extent that Defendant otherwise challenges his life sentence, Defendant's arguments do not constitute extraordinary and compelling circumstances warranting relief. On direct appeal, the Fourth Circuit affirmed Defendant's sentence. *See United States v. Erby*, 246 F. App'x 228, 232 (4th Cir. 2007) (denying a claim that the district court enhanced the sentence by relying on uncharged and unadmitted facts). And, to the extent that Defendant otherwise attacks his life sentence as illegal, compassionate release is not the correct vehicle in which to collaterally attack his sentence. *United States v. Ferguson*, 55 F. 4th 262, 270 (4th Cir. 2022) ("Because § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use

of another mechanism, such as compassionate release, to sidestep § 2255's requirements."). It appears that Defendant is attempting to sidestep Section 2255, where he has twice been unsuccessful in obtaining habeas relief. Accordingly, these circumstances also fail to be extraordinary or compelling.

ii.    _Conspiracy to Distribute is a Valid Drug Trafficking Crime_

Defendant's next argument is that his offense in Count 3,[4] in violation of 21 U.S.C. §§ 841(a)(1) and 846, does not constitute a drug trafficking crime. Pursuant to statute, a "drug trafficking crime" for purposes of Section 924(c) is "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 _et seq._), the Controlled Substances Import and Export Act (21 U.S.C. 951 _et seq._), or chapter 705 of title 46." 18 U.S.C. § 924(c)(2). Indeed, Section 846 explicitly provides that it is a punishable felony under that provision to "attempt[] or conspire[] to commit any offense defined in this subchapter" and such person "shall be subject to the same penalties as those prescribed for the offense." 21 U.S.C. § 846.

In the first instance, Defendant's argument is not properly before the Court on a motion for compassionate release. By arguing that his conviction under Section 924(c) lacked a proper predicate, Defendant attacks the validity of his conviction; such collateral attack can only be made pursuant to Section 2255. _See Ferguson_, 55 F. 4th at 270 ("Because § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements."). Defendant cannot sidestep the limitations on Section 2255 motions by framing his request as a motion for compassionate release.

Nonetheless, even considered on a motion for compassionate release, Defendant's argument rests on a faulty premise. Under the plain language of Section 924(c)(2), a conspiracy conviction is a

---

[4] Defendant mistakenly refers to his conspiracy to distribute controlled substances as being Count 1. Dkt. 140 at 15. This is incorrect. _See United States v. Erby_, 246 F. App'x 228 (4th Cir. Aug. 24, 2007) (listing counts of conviction).

9

valid predicate because a "drug trafficking crime" is defined to include Section 846 offenses. *See United States v. Clanton*, 2022 WL 2555973, at *1 n.2 (4th Cir. Mar. 29, 2022);[5] *United States v. Mattocks*, 2024 WL 1889794, at *3 (E.D. Va. Apr. 30, 2024) ("A § 846 drug trafficking conspiracy is a felony punishable under the Controlled Substances Act."); *Suggs v. United States*, 2023 WL 2352929, at *4 (E.D. Va. Mar. 3, 2023) (unpublished) ("A § 846 drug trafficking conspiracy is a felony punishable under the Controlled Substances Act, which is fatal to Petitioner's § 2255 claim."); *United States v. Taylor*, 2025 WL 1518845, at *11 (D. Md. May 27, 2025) ("And, drug conspiracy under 21 U.S.C. § 846 is a proper predicate because it qualifies as a drug trafficking crime for purposes of 18 U.S.C. § 924(c)."). Indeed, the Courts of Appeals appear to generally recognize that a conspiracy conviction under Section 846 is a valid predicate for a Section 924(c) offense because it qualifies as a drug trafficking crime. *See United States v. Heyward*, 3 F.4th 75, 82 (2d Cir. 2021) (recognizing "conspiracy to distribute narcotics *is* a qualifying offense under § 924(c)" (emphasis original)); *United States v. Diaz-De Leon*, 2024 WL 2763809, at *2 (5th Cir. May 30, 2024) (recognizing that Section 924(c)(2) defines "drug trafficking crime" to include "conspiracy to distribute narcotics under §§ 841(a) and 846"); *United States v. Waldron*, 590 F.2d 33, 34 (1st Cir. 1979) (holding a conspiracy to traffic in controlled substances, punishable under 21 U.S.C. § 846, is itself a drug-trafficking crime and may serve as a predicate offense for purposes of 18 U.S.C. § 924(c)).

Although Defendant cites to cases decided by the Supreme Court, those cases address other provisions related to sentencing and are not apposite here. For example, Defendant cites *Mathis v. United States*, 579 U.S. 500 (2016), but that case addressed whether an offense constituted a "violent felony" for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e). *Id.* at 503. Defendant also cites to *Shular v. United States*, 589 U.S. 154 (2020), but that case again addressed the Armed

---

[5] In so holding, the Fourth Circuit held that its prior decision in *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), upon which Defendant also relies and which addresses whether a conspiracy under Section 846 qualifies as a "controlled substance offense" under the sentencing guidelines, was inapplicable. *Clanton*, 2022 WL 2555973, at *1 n.2.

Career Criminal Act and whether certain offenses constituted a "serious drug offense." *Id.* at 156. The Supreme Court's interpretation of the phrases "violent felony" and "serious drug offense" has no bearing on the interpretation of "drug trafficking crime," which is explicitly defined by statute to include any offense under Section 846. Likewise, although *United States v. Martinez-Cruz*, 836 F.3d 1305 (10th Cir. 2016), does address a "drug trafficking offense," it does so in the context of the U.S.S.G. § 2L1.2 – not Section 924(c)(2). *Id.* at 1308.

Accordingly, even if Defendant properly raised this matter as part of his motion for compassionate release (rather than a Section 2255 motion), it still fails because a conspiracy under Section 846 is a drug trafficking crime for purposes of Section 924(c), and there has been no change in the law since his sentencing in 2006.

### iii.   *COVID-19 and Rehabilitation*

Defendant next argues that his incarceration during the COVID-19 pandemic and his rehabilitation constitute extraordinary and compelling circumstances warranting a downward departure. Not so.

In the first instance, Defendant's argument that he would have received a lower sentence, if he had been sentenced during the COVID-19 pandemic, is pure speculation and there is no unwarranted disparity in that regard. Additionally, as Courts of Appeals have recognized, the existence of the pandemic did not automatically entitle inmates to a sentence reduction; all inmates incarcerated in the 2020-2022 time period had to live with the restrictions related to the pandemic, and the pandemic itself did not constitute extraordinary and compelling circumstances in every case. *See, e.g., United States v. Marcussen*, 15 F.4th 855 (8th Cir. 2021); *United States v. Thompson*, 984 F.3d 431, 435 (5th Cir. 2021) ("Fear of COVID doesn't automatically entitle a prisoner to release."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (explaining "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release"). Furthermore, Defendant does not allege that he actually suffered any

harm as a result of the COVID-19 pandemic that would transform his experience into extraordinary and compelling circumstances. Dkt. 140 at 17. Defendant does not allege that he contracted COVID-19 nor does he allege that he suffers any medical condition that put him at particularized risk and, although Defendant broadly alleges that he was deprived of adequate medical treatment, he provides no documentation to support this claim. *Id.*; *see United States v. Davis*, 99 F.4th 647, 655-56 (4th Cir. 2024) (affirming denial of compassionate release based on COVID-19 and recognizing that a defendant must show a particularized susceptibility and a particularized risk of contracting the disease). Although Defendant submitted a declaration in support, the declaration only asserts that he *thinks* he "was infected with COVID-19," and that he was "only given Tylenol." Dkt. 140-2. Thus, Defendant has nothing but his own supposition to suggest that he was infected with COVID-19, and he alleges that he was given treatment, Tylenol. Defendant does not identify any other treatment that was necessary, harms that he suffered, or dates on which he requested medical treatment and was allegedly denied. Defendant's allegations in this regard likewise do not establish extraordinary and compelling circumstances.

Defendant's rehabilitation efforts were the focus of the first motion and the subject of some references in his supplements. Although Defendant's efforts at rehabilitation are to be commended (particularly his participation in the Challenge Program), it does not appear that his rehabilitation efforts are extraordinary, and the programming in which Defendant participates primarily benefits Defendant. *See, e.g., United States v. Muhammad*, 2021 WL 3779632, at *3 (E.D. Va. Aug. 25, 2021) ("Prisoners are expected to obey the rules in prison and to try to improve themselves. Some do not. Most do. But rehabilitation alone is not ground for compassionate release."). Moreover, as the Fourth Circuit has recognized, there is a "statutory prohibition" that "rehabilitation cannot constitute an extraordinary and compelling reason for release." *United States v. Davis*, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022); *United States v. Hill*, 2020 WL 6049912, at *5 (E.D. Va. Oct. 13, 2020)

("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

iv.    *The Alleged Trial Penalty*

Defendant reports that before his trial he was offered a plea agreement which included a sentence of 20 years. Dkt. 140.[6] The Government does not concede that Defendant was offered a plea, and Defendant provides no evidence that such a plea was offered. Indeed, no reference to a plea is included in Defendant's declaration. Dkt. 140-2. Thus, Defendant has not established his burden of showing extraordinary and compelling circumstances by producing evidence that such a plea existed.

Nonetheless, Defendant's purported "trial penalty" argument has two aspects: (i) an ineffective counsel claim; and (ii) a claim that his sentence represents an unwarranted sentencing disparity because he could have received a lower sentence if he pled guilty. The first claim is again not properly raised in a motion for compassionate release. *See Ferguson*, 55 F. 4th at 270 ("Because § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements."). Defendant cannot sidestep the limitations on Section 2255 motions by framing his ineffective assistance of counsel claim as a motion for compassionate release.

To the extent Defendant otherwise relies on an alleged "trial penalty," it again appears to be an attack on the reasonableness of his sentence more properly raised on direct appeal or in a Section 2255 motion. In any event, although Defendant could have capped his sentencing exposure by pleading to fewer than all of the charges alleged in the Second Superseding Indictment, the fact is that he did not do so and thus was exposed to the full panoply of penalties for the crimes of which he was convicted. *See Bordenkircher v. Hayes*, 434 U.S. 357, 358-59 (1978) (mandatory life sentence

---

[6] Defendant is unclear whether the "twenty-year Plea Offer" he references was a promise of a recommended sentence or a sentence in the nature of a Rule 11(c)(1)(C) plea that would be binding on the Court, but this is a distinction without a difference in this context.

13

triggered by earlier convictions held constitutional despite earlier plea offer for recommendation of five-year sentence where prosecutor "no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution"). The Fourth Circuit has rejected the "trial penalty" argument in the context of a direct appeal. *See United States v. Gillespie*, 27 F.4th 934, 944-45 (4th Cir. 2022). In that case, the Fourth Circuit noted that the defendant's argument was: "he has been subject to an improper 'trial penalty' and that his bottom-of-the-Guidelines sentence is therefore substantively unreasonable because it creates an 'unwarranted sentence disparit[y]' with his co-conspirators under 18 U.S.C. § 3553(a)(6)." *Id.* at 944. The Fourth Circuit rejected this argument in two respects: "First, a sentence is not 'unreasonable under § 3553(a)(6) merely because it creates a disparity with a co-defendant's sentence.' Second, individuals who opt to go to trial are not similarly situated to those who plead guilty and cooperate with the government for purposes of § 3553(a)(6)." *Id.* at 945 (internal citations omitted). Thus, the Fourth Circuit has rejected arguments similar to those raised by Defendant here.

District judges in this District have similarly rejected assertions of a trial penalty to establish extraordinary and compelling circumstances warranting compassionate release. *See, e.g., United States v. Locust*, 591 F. Supp. 3d 12, 26 (E.D. Va. 2022), *aff'd*, 2022 WL 17249664 (4th Cir. Nov. 28, 2022) ("Defendant did not suffer a 'trial penalty' warranting a sentence reduction under § 3582(c) (1) (A) (i), because of his rejection of a plea offer."); *United States v. Butler*, 2023 WL 3198124, at *19 (D. Md. May 2, 2023) ("Moreover, Butler opted for trial in this case. He has not been punished for exercising that sacred right. But, his decision foreclosed the award of deductions to his offense level for acceptance of responsibility, which was earned by most of his codefendants. The government is entitled to reward a defendant who accepts responsibility for criminal conduct and/or who spares the system the burden of a trial."); *United States v. Wright*, 2022 WL 2104489, at *16 (D. Md. June 10, 2022) ("As to this case, I do not share that view. The facts warranted the lengthy sentence."). Other Courts of Appeals have also rejected the trial penalty argument. *See, e.g., United States v. Fredrickson*,

14

2022 WL 16960322, at *1 (7th Cir. Nov. 16, 2022) (affirming district judge decision where "[t]he judge explained that Fredrickson had not received an impermissible penalty just because he went to trial and received a higher sentence than if he had pleaded guilty"); *United States v. Arias*, 2023 WL 6892101, at *1 (9th Cir. Oct. 19, 2023) (affirming district judge decision rejecting "trial penalty" argument). Although Defendant points to one decision from within this District accepting a trial penalty argument, that case appears to be unusual, is not binding on this Court, and is not persuasive, especially in light of the Fourth Circuit's decision in *Gillespie*. *See United States v. Carrington*, 2022 WL 617617, at *7 (E.D. Va. Mar. 2, 2022).

In short, Defendant's argument is not properly before the Court on a motion for compassionate release; even if it is properly before the Court, Defendant has not established that he was offered such a plea deal, and the Fourth Circuit and other courts have rejected that a sentence is unreasonable or constitutes a trial penalty where it is more severe than it might have been if a defendant had pled guilty. Moreover, as Judge Hilton noted, the sentence here was driven by "the murder of James Ridley." Dkt. 113. In such circumstances, the Court does not find that Defendant's sentence constitutes extraordinary and compelling circumstances.

\*        \*        \*

Taking Defendant's arguments individually or together, Defendant has not established extraordinary and compelling circumstances warranting a sentence reduction. Accordingly, the Motion will be denied.

### C.    Section 3553(a) Factors

Even assuming *arguendo* that Defendant has established extraordinary and compelling circumstances, that does not end the analysis. *See United States v. Hargrove*, 30 F.4th 189, 195 (4th Cir. 2022) (recognizing that a district court "is still not required to grant the defendant's motion for a sentence reduction"). Defendant must also establish that the Section 3553(a) factors support a sentence reduction; here, they do not. Defendant focuses on his rehabilitation (for which he is to be commended)

15

and the lack of danger he presents to the community, but those do not outweigh the other Section 3553(a) factors.

With respect to the remaining Section 3553(a) factors, Defendant was convicted of a serious drug-trafficking conspiracy and three gun-related charges. Moreover, Defendant killed James Ridley, shooting him three times, at close range, while trying to rob him, and this occurred after Defendant had been involved in another shooting. Dkt. 116 ¶¶ 15, 17-18, 32. Defendant also engaged in conduct designed to threaten potential witnesses. *Id.* ¶¶ 39-43. And Defendant has an extensive criminal history, reflected in a Criminal History Category IV. Dkt. 116 ¶ 85; *see, e.g., United States v. Bowser*, 539 F. Supp. 3d 572, 576-77 (E.D. Va. 2021) (finding that the defendant's "criminal history" and "general disregard for the law" did not support release); *United States v. Freeman*, 617 F. Supp. 3d 386, 400 (E.D. Va. 2022), *aff'd*, 2023 WL 4797316 (4th Cir. July 27, 2023) (denying motion for compassionate release based on "Defendant's offense conduct [and] criminal history" notwithstanding his age at the time of offense and rehabilitation). Additionally, Defendant has not expressed remorse for the crimes of which he was convicted. Courts have declined to grant compassionate release where a defendant does not express such remorse or recognize the impact of his criminal behavior on his victims. *See United States v. Ramirez*, 2025 WL 1307810, at *3 (E.D. Va. May 6, 2025) ("Moreover, although Defendant purports to be rehabilitated, there is no recognition in either motion for compassionate release that he has filed of the harm that he caused nor remorse for his actions."); *United States v. Little*, 2021 WL 1394858, at *5 (W.D.N.C. Apr. 13, 2021) (denying motion for compassionate release to defendant serving life sentence for violation of 18 U.S.C. § 1959(a)(1) where defendant did not express remorse for his crimes). Thus, the Section 3553(a) factors – in particular, the nature and circumstances of the offense; the history and characteristics of the defendant; the seriousness of the offense; and the need to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes of the

defendant – weigh against a sentence reduction here. Accordingly, the Section 3553(a) factors do not support a sentence reduction, and the Motion will also be denied for this reason.

### IV. CONCLUSION

Accordingly, it is hereby ORDERED that Defendant's requests for appointment of counsel (Dkts. 127, 136, 138) are DENIED; and it is

FURTHER ORDERED that the Motion for Compassionate Release (Dkt. 130) and his supplements (Dkts. 140, 146) are DENIED; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to terminate the following motions (Dkts. 75, 81, 92, 94, 96, 98, 99, 100, 101, 106, 108, 109, 118, 127, 128) as they were previously withdrawn in Defendant's Letter Motion (Dkt. 129) which is GRANTED.

If Defendant wishes to appeal this decision, he must file a written Notice of Appeal with the Clerk of this Court within fourteen (14) days of receipt of this Memorandum Opinion and Order. Failure to file a timely Notice of Appeal waives the right to appeal.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to Defendant, who is proceeding *pro se*, and to the Government.

It is SO ORDERED.

Alexandria, Virginia
May 4, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

17